They further find that upon the finding of the jury the defendant discharged the said negro so previously levied upon, and that on 10 May following, the plaintiff tendered to the defendant a bond of indemnity, and requested him to make sale of the said negro under the execution aforesaid, and that the defendant refused to accept said bond or make such sale.
They further find that the sheriff returned upon the said execution that the same was satisfied as to part, viz., £ 1,089 10s., by the sale of sundry negroes mentioned in the schedule annexed to said return, and that the balance of the execution remained unsatisfied, no more property being to be found.
They further find that in 1798 Joseph Haiden aforesaid, being possessed of the said negro Isham, as if his own proper goods and chattels, made a gift of him to his son Robert, then a minor and being with his father; that Joseph Haiden continued to keep said negro in his possession until his death, and by his last will bequeathed said negro to his son Robert, who was still living with his father.
They further find that at the time of making the gift aforesaid, and continually up to the time of the death of the said Joseph Haiden, he was possessed of personal estate more than sufficient to pay all his debts, and was seized of real estate, unencumbered, of the value of £ 250.
They further find that the gift of the said negro was made bona fide, except the circumstance aforesaid do in law make the same fraudulent; and that on 10 May, 1806, he was of the value of £ 225.
They further find that the defendant since 10 May, 1806, for (74) a valuable consideration, purchased the said negro Isham of the aforesaid Robert Haiden, and hath conveyed him away beyond the process of this court. But whether under these circumstances the plaintiff is entitled to recover, the jurors aforesaid are ignorant, and pray the opinion of the court. If the court should be of opinion that he is entitled in law to recover, then they find for the plaintiff, and assess his damages to £ 225 and costs of suit. But if the court should be of opinion that the plaintiff is not so entitled, they then find for the defendant. *Page 59 
The facts found in this case, out of which the questions submitted arise, are these: that Joseph Haiden on 28 April, 1786, executed a bond to the plaintiff in the penal sum of £ 2,000, conditioned for the payment of £ 1,000 on or before 1 May, 1787; that the plaintiff recovered judgment for the penalty of the bond, on which execution issued returnable to September Term, 1806, at Salisbury Superior Court, and was put into the hands of the defendant, then being sheriff of Rowan, who levied it on sundry negroes, and among others on one named Isham, then in the possession of Margarett Brown, executrix, etc., of the said Joseph Haiden.
The defendant advertised the sale of the said negro Isham under the execution and levy aforesaid. On the day of sale Robert Haiden, a son of the said Joseph Haiden, claimed the said negro Isham; whereupon the defendant impaneled a jury to try the right of property in said negro, who found that the said negro was not of the estate of the said Joseph Haiden, but belonged in absolute property to the said Robert Haiden, by virtue of a parol gift made by the said Joseph to the said Robert in 1796. The plaintiff had no notice of the inquisition; it wasex parte, and took place on 28 April, 1806. The defendant discharged the negro on the finding of the jury. On 10 May following the plaintiff tendered to the defendant a bond of indemnity, with sufficient security, and required him to sell the said negro Isham under (75) the execution aforesaid. The defendant refused to accept the bond or to sell the negro. He returned the execution, satisfied as to £ 1,089 10s. by the sale of sundry negroes not including Isham. That the balance of the execution remained unsatisfied, "no more property being to be found."
That at the time of the gift Robert was a minor, and lived with his father, who continued to keep possession of the negro till his death. By his last will he devised the said negro to his son Robert, who continued to live with his father till his death. That at the time of the gift, and continually after the time of his death, the said Joseph Haiden was possessed of personal estate more than sufficient to pay all his debts, and was seized of real estate, unencumbered, to the value of £ 250.
Out of the preceding statement two questions arise:
1. Is the verdict of the jury, finding the right of property in the negro Isham to be in Robert Haiden, and not in Joseph Haiden, conclusive against the plaintiff, so as to bar his action against the defendant?
2. If the verdict of the jury be not conclusive, was the gift of the negro by Joseph Haiden to his son Robert fraudulent in law, and therefore liable to the plaintiff's execution? *Page 60 
As to the first, it may be proper to remark that the office of sheriff has many duties of high responsibility attached to it, in the furtherance of which error or a mistake of the law on the part of the sheriff may involve him in difficulty and subject him to loss; but in the performance of all official acts the sheriff must act at his peril. Gilbert, in his treaties on executions, 21, says the sheriff is bound at his peril to take only the goods of the defendant; and if he doubt whether the goods shown him be the defendant's, he may summon a jury de bene esse to satisfy himself whether the goods belong to the defendant or not. This will justify him in returning that the defendant has no goods within his bailiwick, and mitigate damages in an action of trespass, if the (76) goods seized should not happen to be the defendant's.
The only effect, then, which such an inquisition can have is to satisfy the sheriff himself on the question of property; to govern his own discretion in the exercise of his office; to excuse him for returning "nulla bona," and to mitigate the damages in an action of trespass, should the goods taken not belong to the defendant, as supposed by the finding of the jury; but not to conclude the plaintiff in execution from showing that the property levied on did in fact belong to the defendant, in opposition to the verdict of the jury.
In Roberts v. Thomas, 6 Term, 88, speaking of a similar case, LordKenyon, C. J., says: "This is a kind of inquest of office; it is merely to indemnify the sheriff in making his return to the writ; but it does not bind the right between the litigating parties."
Had the plaintiff in execution been present when the jury were impaneled to try the question of property, if he had been afforded an opportunity of disproving the claim set up to the negro by Robert Haiden, and if he had been fully heard on that occasion, and the jury had, after hearing both sides, found a verdict in favor of Robert, then there would be more plausibility in the position that the finding of the jury should be conclusive between the plaintiff and the sheriff; but it would be in violation of the first principles of law and rational justice to conclude the plaintiff on a question where he was neither heard nor had any opportunity of being heard, as the case states that he had no notice of the inquisition, and that it was entirely ex parte.
But admitting that the plaintiff had been duly notified of and present at the taking of the inquisition, still it is not conclusive as to him. The right decision of most questions of property depends on the interpretation of the rules of law applicable to each particular case, which questions can be properly tried only before courts of justice of competent skill to expound and enforce the rules of law. The inquisition held by *Page 61 
jury affords an opportunity for the application of the rules of evidence and of law pertinent to the case, and the party aggrieved by their decision, having no right to appeal from it, would be without (77)remedy if such decision should be conclusive. Such an inquisition can serve only to indemnify the sheriff in making his return, but it does not bind the right of the litigating parties.
The plaintiff having offered the defendant sufficient indemnity for selling the negro, and he having refused to accept it and to sell under the execution, leaves him entirely without excuse. On the first point, therefore, the Court is of opinion that the finding of the jury is not conclusive in favor of the defendant in this action, and that the plaintiff was not bound by it from showing that the property of the negro was in Joseph Haiden.
As to the second question, the Court is of opinion that the gift of the negro in question by Joseph Haiden to his son Robert was fraudulent in law, and void against the rights of the plaintiff, and liable to his demand. The grounds on which this point is decided are fully explained in the case ofSherman v. Russell, decided at this term, post, 79; and a repetition of them here is deemed unnecessary.
Judgment for the plaintiff.
NOTE. — On the first and second points, see Yarborough v. Bank,13 N.C. 23; and on the last point, see the cases collected in the note toFarrell v. Perry, 2 N.C. 2, and, also, the cases of Peterson v.Williamson, 13 N.C. 326, and Harriss v. Yarborough, 15 N.C. 166.
Cited: West v. Dubberly, post, 479; S. v. Tatum, 69 N.C. 37; Griffinv. Hasty, 94 N.C. 441.