On the same day with the above deed, Thomas Cox also executed a similar one to his son, Longfield, for several other slaves, and the other half of the lot; and the two deeds comprehended all the slaves and real estate which Thomas Cox then owned, and which formed the principal part of his fortune. The children were of the ages of 8 and 10 years. No delivery was proved.
Thomas, when he made these deeds, owned some horses, household furniture, etc., and was also indebted to several persons, but not to the amount of the property thus conveyed.
Afterwards, in 1797, Thomas sold the slave Ben to Loften, and executed a bill of sale. The price given was £ 50, though the slave was worth £ 200. The slave was seized in Loften's possession on an execution at the suit of Tignor, sold and purchased by Loften, (479) after he had forbidden the sale and made known the gift to the plaintiff, adding, that the purchaser would buy a lawsuit. Loften, however, did not disclose the prior purchase made by himself.
Thomas Cox became greatly involved after the gifts to his children. All the property comprehended in them was seized by his various creditors and sold, and he himself took the benefit of the act for the relief of insolvent debtors. On the death of Loften, the slave in question was allotted to one of his daughters as part of her distributive share, and on her intermarriage with the defendant, came to his possession.
The case was submitted without argument.
If the deed to the daughter was made with a view to defraud creditors, though clothed in the most solemn form, it would be void when opposed to such claimants; and if made without such a motive actually existing, yet if unattested by a subscribing witness, it is declared void by the act of 1784, which act our courts have construed to extend only to creditors and purchasers. Pearson v. Fisher, 4 N.C. 72; Sherman v. Russell, 4 N.C. 79. *Page 356 
Loften, under whom the defendant claims, purchased first from the father, and afterwards at the sale of a creditor under an execution against the father. If the first purchase was bona fide (and there is nothing to impeach it but merely the inadequacy of price), the deed to the daughter being a gift, and unattested by a subscribing witness, is, as to him, void; and the inadequacy of a price is a circumstance from which, with others, fraud may be inferred, yet in itself it is insufficient. But if this purchase was mala fide (Squire v. Riggs, 4 N.C. 253), and with iniquitous intent, it would still leave the property, as it found it, liable to the claims of creditors; and the last purchase being made from a public officer, against whose conduct there is no imputation, the sale being to the highest bidder, where every person had an equal opportunity, though Loften's conduct at that sale gives no grace to his claim, yet if the father then had a title which was answerable to his (480) creditors, it necessarily passed to Loften by such sale. We have not thought it necessary minutely to notice the circumstances under which the deed was executed to the daughter; but if it was, we should have no hesitation in pronouncing it fraudulent.
The father, at a time he is much embarrassed, conveys nearly the whole of his estate absolutely to his two infant children, who, from their tender years, are incapable of using it. A conduct so extraordinary, and unnecessary in itself, affords the strongest evidence of a fraudulent intention; and when coupled with a subsequent sale of the same property for a valuable consideration, or opposed to the claim of creditors, conviction
follows.
Upon no ground, therefore, can the verdict be supported, but must be set aside and a nonsuit entered.
NOTE. — See the cases collected in the note to Farrell v. Perry,2 N.C. 2, and also the cases of Peterson v. Williamson, 13 N.C. 326, andHarris v. Yarborough, 15 N.C. 166.
Cited: Bell v. Culpepper, 19 N.C. 21.